**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE**: | § | |
| | § | |
| **CHRISTIAN LIFE CENTER, INC.** | § | **CASE NO. 13-37415-H2-11** |
| **Debtor** | § | **CHAPTER 11** |
| | § | **JUDGE JONES** |

---

# Debtor's Disclosure Statement

---

Comes now **CHRISTIAN LIFE CENTER, INC. ("Christian Life")**, Debtor-in-Possession herein, and files this Disclosure Statement pursuant to the provisions of Section 1125 of Title 11 of the United States Code.

### Table of Contents

| | Topic | Page |
|---|---|---|
| I. | Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 |
| II. | Nature of Chapter 11 Reorganization Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 4 |
| III. | Consideration in Voting on Chapter 11 Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 |
| IV. | History of the Debtor  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9 |
| | A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9 |
| | B.     Events Leading to Chapter 11 Filing  . . . . . . . . . . . . . . . . . . . . . . . . 10 |
| | C.     Operation and Present Condition of the Debtor While in Chapter 11   . . 11 |
| V. | Anticipated Future of the Debtor  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 |

VI.         Source of information for this Disclosure Statement  . . . . . . . . . . . . . . . . . . . . . 15

VII.        Disclaimer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VIII.       Professional Fees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IX.         Description of Assets  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

X.          Summary of Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            A.      Other Provisions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

            B.      Bar Dates for Filing Proof of Claims  . . . . . . . . . . . . . . . . . . . . . . . . . 23

XI.         Pending Litigation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XII.        Alternatives to the Plan Proposed  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

            A.      Conversion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

            B.      Dismissal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

            C.      Default  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XIII.       Federal Income Tax Consequences to Creditors  . . . . . . . . . . . . . . . . . . . . . . 27

XIV.        Means for Implementation and Execution of the Plan  . . . . . . . . . . . . . . . . . . . 28

XV.         Modification of Disclosure  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XVI.        Disclosure Required by the Bankruptcy Code  . . . . . . . . . . . . . . . . . . . . . . . . . 29

XVII.       Fraudulent and Preferential Transfers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XVIII.      Other Bankruptcies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XIX.        Conclusion   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>**NOTICE TO CREDITORS AND PARTIES IN INTEREST**</u>

**THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT, NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATIONS OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE DISTRICT COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**I.**

<u>**Introduction**</u>

On December 2, 2013, the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code (hereinafter the "Code"), Case Number 13-37415-H2-11. The Debtor has remained in possession of its property pursuant to the provisions of 11 U.S.C. §§1144 and 1107, which provides that the Debtor shall retain possession of and manage its property. The Debtor has retained the law firm of Tow & Koenig, PLLC, Julie M. Koenig as Lead Counsel for the Debtor on an houly basis. This law firm has continued to represent the Debtor in these proceedings.

The first meeting of creditors pursuant to §341 of the Code in the Chapter 11 proceeding was held and concluded on January 21, 2014 at 11:00 a.m. at the United States Trustee's office in Houston, Texas.

This Disclosure Statement ("Disclosure Statement") is provided pursuant to 11 U.S.C. §1125 to all of the Debtor's known creditors and other parties-in-interest in connection with the solicitation of acceptance of the Debtor's Plan of Reorganization, (the "Plan") filed by Christian Life, Debtor-in-Possession. This Disclosure Statement contains important information about the Plan. The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable creditor typical of the holders of claims in this liquidation case to make an informed

judgment in exercising its vote to either accept or reject the Plan.  The Debtor has prepared this Disclosure Statement in order to disclose that information which, in its opinion, is material, important, and necessary to an evaluation of the Plan.

**THE PLAN  IS NOT A PART OF THIS DISCLOSURE STATEMENT AND MUST BE REVIEWED INDEPENDENTLY.**

This Disclosure Statement must be approved by the Bankruptcy Court and/or District Court, after notice and hearing, prior to the solicitation of creditors with respect to their acceptance of the Plan.

Your vote on the Plan is important.  In order for the Plan to be deemed "accepted" by creditors, Sixty-Six and Two-Thirds Percent (66-2/3%) in amount of claims and more than Fifty Percent (50%) in number of claims voting in each class must accept the Plan.  In the event the Plan is not accepted by any class, the Debtor will request confirmation of the Plan in accordance with the provisions of 11 U.S.C. §1129(b).  Whether or not you expect to be present at the Confirmation Hearing, you are urged to fill in, date, sign and properly mail the Ballot to the Clerk of the United States Bankruptcy Court, 515 Rusk Avenue,  Houston, Texas 77002, with a copy to Julie M. Koenig, 26219 Oak Ridge Drive, The Woodlands, Texas 77380, Attorney for the Debtor.

**II.**
**Nature of Chapter 11 Reorganization Proceedings**

Chapter 11 of the Bankruptcy Code is a remedial statute designed to effect the rehabilitation and reorganization of financially distressed individuals and entities or the orderly liquidation of the Debtor's property to maximize the return to the Debtor's unsecured creditors.  The statutory aims of reorganization/liquidation proceedings include the following:

(a)     preservation of the Debtor's property as a "going concern" and the preservation of any going concern value of the Debtor's business and property;

(b)     avoidance of the forced and destructive liquidation of the Debtor's assets;

(c)     the protection of the interest of the creditors, both secured and unsecured;

(d)     the restructuring of the debts of the Debtor and its finances to enable it to retain those assets necessary to rehabilitate its finances and produce the greatest recovery for its creditors.

While the formulation and confirmation of a Plan of Reorganization or Liquidation is the principal function of a Chapter 11 case, Congress recognized in 11 U.S.C. Section 1123(a)(5)(d), that the sale of all or any part of the property of the estate and the distribution of all or part of the property of the estate among those having an interest in the property is also a legitimate function of a Chapter 11 proceeding.  Therefore, a Plan may affect the interest of all parties and creditors, reject executory contracts and provide for prosecution and/or settlement of the Debtor's claims against third parties.  For a Plan to be confirmed by the Court, the Code requires that the Court finds that the Plan has received the favorable votes of certain requisite classes and that the Plan be "fair, equitable and feasible," as to any dissenting classes of creditors.  A more detailed description of the voting requirements of a Plan is set forth on pages 7 - 9 of this Disclosure Statement.

To be determined "fair and equitable", a Plan must comply with the so-called "absolute priority rule".  The absolute priority rule requires that beginning with the most senior rank of claims of creditors against the Debtor, each class in descending rank or priority must receive full and complete compensation before an inferior or junior classes may participate in the distribution.  The Plan must be accepted by the affirmative vote of a majority of creditors holding two-thirds in amount of claims filed and allowed by each class, unless adequate provisions are made for the classes of descending creditors.  The foregoing is a brief summary of the requirements for a Plan and should

not be relied upon for voting purposes.  Creditors are urged to consult their own counsel before making any decisions on a Plan filed herein.

In addition to the above, 11 U.S.C. §1125 requires that a Debtor compile a Disclosure Statement which provides "adequate information" to creditors before anyone may solicit acceptance of a Chapter 11 Plan.  This Disclosure Statement is prepared in accordance with Section 1125 to provide "adequate information" to the creditors in this proceeding.  Creditors are urged to consult with their own individual counsel or each other and to review all of the pleadings filed in this bankruptcy proceeding in order to fully understand the disclosures made herein, the Plan of Reorganization filed herein, and any other pertinent matters in this proceeding.

This Chapter 11 proceeding is conducted under the supervision of a Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  Pursuant to the Code, the Court may:

(a)     authorize the Debtor, as Debtor-in-Possession, to operate its business and manage its property;

(b)     permit rejection of executory contracts;

(c)     authorize the Debtor to issue certificates of indebtedness;

(d)     authorize the Debtor-in-Possession to lease or sell the property of the Debtor;

(e)     authorize the Debtor-in-Possession to compromise claims in the Estate;

(f)     grant or deny relief from the stay or any suit against the Debtor and of any acts or proceedings to enforce a lien against the Debtor's property; and

(g)     approve and confirm any Plans of Reorganization.

## III.
## Considerations in Voting on The Chapter 11 Plan

**Operation of Chapter 11**.  Chapter 11 of the Bankruptcy Code permits the adjustment of secured debts, unsecured debts, and equity interests.  A Chapter 11 Plan may provide less than full satisfaction of senior indebtedness and payment of junior indebtedness or may provide for return of the stock in a Debtor corporation to its equity owners absent full satisfaction of indebtedness provided that an impaired class does not vote against the Plan.

If an impaired class votes against the Plan, implementation of the Plan is not necessarily impossible.  Provided that the Plan is fair and equitable and that each class is afforded treatment as allowed by and defined in the Bankruptcy Code, treatment of a particular class may be very broadly defined as providing to a creditor the full value of its claim.  The value of that creditor's claim is determined by the Court and balanced against the treatment afforded the dissenting class of creditors.  If the latter is equal to or greater than the former, the Plan may be confirmed over the dissent of that class, depending on junior claims and interests.

In the event a class is unimpaired, it is automatically deemed to accept the Plan.  A class is unimpaired if:

1.  Its rights after confirmation are the same as existed (or would have existed absent any default) before the commencement of the Chapter 11 case, that any existing defaults are cured or provided for under the plan, and the class is reimbursed actual damages; or

2.  The allowed claims of the class are paid in full in cash as they are matured.

If there is no dissenting class, the test for approval by the Court of a Chapter 11 Plan is whether the Plan is in the best interest of the creditors and interest holders and is feasible.

**IN SIMPLE TERMS, A PLAN  IS CONSIDERED BY THE COURT TO BE IN THE BEST INTEREST OF CREDITORS AND INTEREST HOLDERS IF THE PLAN WILL PROVIDE A BETTER RECOVERY TO THE CREDITORS AND INTEREST HOLDERS**

**THAN THEY WOULD OBTAIN IF THE DEBTOR WERE LIQUIDATED AND THE PROCEEDS OF THE LIQUIDATION WERE DISTRIBUTED IN ACCORDANCE WITH THE BANKRUPTCY LIQUIDATION PRIORITIES.  IN OTHER WORDS, IF THE PLAN PROVIDES CREDITORS AND INTEREST HOLDERS WITH MONEY OR OTHER PROPERTY OF VALUE EXCEEDING THE PROBABLE DIVIDEND IN LIQUIDATION BANKRUPTCY THEN THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND INTEREST HOLDERS (THE COURT, IN CONSIDERING THIS FACTOR, IS NOT REQUIRED TO CONSIDER ANY OTHER ALTERNATIVE TO THE PLAN OTHER THAN LIQUIDATION BANKRUPTCY).**

In considering feasibility, the Court is only required to determine whether the Plan can be accomplished by the Debtor.  This entails determining:

A.    The availability of cash for payments required at confirmation;

B.    The ability of the Debtor to make payments called for under the Plan; and

C.    The absence of any other factor which might make it impossible for the Debtor to accomplish that which  it promises to accomplish in the Plan as contemplated in the Plan.

In addition, in order to confirm a Plan the Court must find, among other things, that the Plan was proposed in good faith and that the Plan and its proponents are in compliance with the applicable provisions of Chapter 11.

These determinations by the Court occur at the hearing on confirmation of a Plan.  The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any debt instrument or equity interest or security interest issued to creditors under the Plan.  Rather, the Court's judgment is merely that the Plan complies with the applicable Code provisions and has garnered sufficient votes by its creditors for confirmation.

**UPON SATISFACTION OF §1129(a) GENERAL CONFIRMATION STANDARDS, BUT EXCLUDING PARAGRAPH (8), THE DEBTOR MAY REQUEST THAT THE COURT CONFIRM THE PLAN OVER THE DISSENT OF A CLASS.  THE COURT IS REQUIRED TO CONFIRM IF THE PLAN MEETS WITH THE CRAM DOWN STANDARDS SET**

FORTH IN §1129(b).  THIS PROCEDURE IS THE PROCESS BY WHICH A DISSENTING CLASS OF CREDITORS OR INTERESTS IS BOUND BY THE TERMS OF A CHAPTER 11 PLAN WITHOUT ITS CONSENT.  THIS PLAN MAY BE CONFIRMED WITH REFERENCE TO A NON-ACCEPTING IMPAIRED CLASS IF TWO STANDARDS ARE MET:  (1) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AGAINST THE CLASS, AND (2) THE PLAN IS FAIR AND EQUITABLE WITH REFERENCE TO THE CLASS.  UPON SUCH DETERMINATION, THE COURT WILL BIND THE DISSENTING CREDITOR(S) TO THE PLAN WITHOUT ITS CONSENT.

## IV.

### History of The Debtor

**A.**    **Background**

Christian Life Center was chartered in 1936 in Houston Texas under the name of "Norhill Assembly of God Church".  The Church grew and in the mid 1960 they moved to a new location, 12330 Vickery Street in the Freeway Forest Subdivision of Harris County.  They changed the name of the Church to "Freeway Forest Assembly of God Church".  The Church grew in the 1970's to become one of the largest Assembly of God Churches in the city of Houston.  In the 1980's the Church began to loose membership due to internal problems.  Other members began to leave as the neighborhood began to change from what was once suburban Houston to the inner city.  In the late 1980's the name was once again changed to its current name "Christian Life Center".  Between the years of 1987 and 1989 the Church went through difficult financial struggles.  They had closed their school and day care center and they went through three pastors in a period of two years.

In June of 1989, Pastor Richard and Lisa Rodriguez became the pastors of Christian Life Center.  Since then the Church has grown from approximately 30 worshipers in an average Sunday morning attendance to 400 worshipers  in an average Sunday morning attendance.  The Christian

school and day care are reopened and are fully accredited, state recognized learning institutions with nearly 250 students currently enrolled.   The school's athletic department has been recognized nationally and internationally on the Today Show, ESPN and the local Fox network.  Currently The Debtor Academy has one of the top ranked Prep school basketball teams in America. Three graduates have been drafted into the NBA.

**B.      Events Leading to the Chapter 11 Filing:**

         Christian Life Center has been in existence since 1936.  Pastor Rodriguez has been the pastor here since 1989 and during his 25 years as the senior pastor, The Debtor has never had problems paying the mortgage on the Church property until Hurricane Ike struck in September of 2008. September is usually the most profitable  month of the year with school starting.  After Ike, the school couldn't start on time.  Both of the Church buildings were damaged severely by the storm. In an effort to continue to service the mortgage, The Debtor had to sell its 50,000 square foot school building to reduce the mortgage while our insurance company fought with us over the amount of damages.   In 2012, the insurance company finally agreed to send The Debtor approximately $280,000.00 as a settlement.  This was going to help The Debtor continue to service the mortgage since most of the repairs had already been done.  When the settlement check was sent, the mortgage company kept the check.  The Debtor was not late on the mortgage at that time.  The Debtor  later learned that the mortgage company violated the terms of the mortgage by keeping these funds - according to the mortgage contract, these funds should have been placed in a trust account with the mortgage company.   The Debtor should have directed how these funds were distributed in writing, according to the terms of the mortgage documents. This was devastating to The Debtor's finances. Pastor Rodriguez explained to the mortgage company that The Debtor would need some help and

requested it be allowed to make interest only payments for one year. The mortgage company refused that request and The Debtor defaulted on the mortgage towards the end of 2013. After only being about 45 days late on making the mortgage payment, the mortgage company threatened to foreclose so Pastor Rodriguez called a meeting of the Board of Directors. At that meeting it was determined that it would be in the best interest of The Debtor and its creditors to file a chapter 11 restructure bankruptcy. This would give The Debtor the opportunity to remain in business long enough to sell its current location and purchase something more affordable.

**C.** **Operation and Present Condition:**

Currently the school is growing. Pastor Rodriguez has taken steps to recruit more students from abroad and as a result the income has increased. The Debtor has also taken measures to reduce the expenses. In addition to school growth the Church's congregation is growing and as a result general donations are beginning to increase. Pastor Rodriguez has also been successful in renting the Church building out to other churches and as a result we anticipate increases in income of approximately $100,000.00 for 2014.

**V.**
**Anticipated Future of the Debtor**

1.      **Management:**

A.      **President and Senior Pastor:**

Richard Rodriguez is the President and Senior Pastor of The Debtor.   He was born and raised in South Texas and has a rich Texas History.  Not only was the farm he grew up on the location of one of the bloodiest battles of Texas history but his uncle Joe Navarro is the direct descendant of José Antonio Navarro who signed the Texas Declaration of Independence.  In addition Pastor Richard's Great grandfather was President Venustiano Carranza president of Mexico.

Pastor Rodriguez has been the senior pastor of Christian Life Center since June of 1989. Under his leadership the church has grown from an average attendance of approximately 30 to 400 with special services reaching attendances in the multiplied thousands.

Pastor Rodriguez is a graduate of Pleasanton High School and received his ministerial studies through the Global University Study Center.  Prior to becoming a minister Pastor Rodriguez worked in management with companies such as Keebler Cookie Company, Pepsi Cola bottling company and in Retail management.

Pastor Rodriguez has been married to Lisa Rodriguez for 35 years and they are the parents of four children, Richard Anthony age 33, Erin Rachelle age 31, Joshua Seth age 27 and Ashton Elise age 21.

Pastor Rodriguez is a salaried employee making $52,000 per year and a housing allowance of $68,640 per year.

The management team will not change during the term of the Plan.

B.      **Chief Financial Officer:**

Joshua Rodriguez is the Chief Financial Officer of The Debtor.   He graduated from the Christian Life Center Academy in 2005.   He has essentially grown up with the Church and is involved in every aspect of running each of its businesses.

He is a salaried employee making $28,080.00 per year.

**C.**   **Employees:**

In addition to Pastor Rodriguez and Joshua Rodriguez, The Debtor employs eighteen (18) salaried  employees whose salaries range from $10,400 to $28,600 per year.   The Debtor also employs eleven (11) hourly employees whose hour rate ranges from $7.25 to $10.40 per hour.   The Church has four full time and three part time employees, the school has eight full time and one part time employees, the daycare center has approximately thirteen full time employees.   Some of the employment overlaps between these businesses and the bookstore and coffeeshop.

**2.**   **Historical Income:**

Historically the Church grosses approximately $600,000 per year, the Daycare grosses approximately $450,000 per year, the School grosses approximately $400,000 per year, the kitchen grosses approximately $70,000 per year, and the Coffee Shop, Book Store and Vending Machines gross approximately $60,000 per year combined.

**3.**   **Indebtedness on the filing date:**

As of the date of filing, the Debtor's indebtedness was as follows:

| | | |
|---|---|---|
| 1. | Secured Debt: | $5,233,071.74 |
| 2. | Priority Debt: | $0.00 |
| 3. | Undisputed Unsecured Debt: | $64,991.34. |

|  |  |
|---|---|
| **Total:** | **$5,298,063.08** |

**4.  Liquidation Analysis:**

The Debtor  has compiled a "Liquidation Analysis" to predict the outcome and payment to its creditors if the Debtor were to be liquidated under Chapter 7 of Title 11 of the United States Code.  A true and correct copy of the "Liquidation Analysis" is attached hereto as Exhibit "A" and incorporated herein by reference.

The Debtor has also prepared a Cash Flow Projection setting forth estimated revenue, costs of sales, operating expenses and payments to the classes under the proposed Plan.  These estimates are based on current sales and predicted profits of the Debtor's business.   The Cash Flow Projection is attached as Exhibit "B"       A listing of the anticipated payments under the Debtor's Plan is attached to this Disclosure Statement as Exhibit "C".

**5.  Absolute Priority Rule:**  Section 1129(b)(2)(B)(ii) controls the payment of senior and junior classes of claims or interests in the event that all of the applicable requirements of Section 1129(a), other than paragraph (8), are met with respect to a plan.  In the event that any impaired class (other than an "insider", as defined in 11 U.S.C. § 101(31)) rejects the Plan, the equity interest holders (or other interests junior to unsecured creditors) may only retain their interest in the Reorganized Debtor in return for new value infused into the Reorganized Debtor in accordance with Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 445 (1999). The assessment of the required "new value" for the equity interest holders (or other interests junior to unsecured creditors) is to be made in the event that any impaired class (that is not an "insider") rejects the Plan.

The Debtor believes that the Plan meets the "fair and equitable" test and does not discriminate unfairly with respect to secured class of creditors or interest holders.  Under the terms of this plan, the principals of the Debtor shall retain their interest in the Reorganized Debtor.  The Debtor believes that this interest is valued at $0.  The retention of this interest may prevent the Debtor from seeking relief under 1129(b)(2)(B). Unless all impaired classes vote for the Debtor's plan, the retention of this interest will prevent the Debtor's plan from being confirmed and the case will be dismissed or converted.

## VI.
## Source of Information for this Disclosure Statement

The information contained herein has not been subject to a certified audit.  Much of the information, descriptions, values and facts contained herein are derived from the Debtor's experience in the aircraft repair business and the unverified opinions of third parties.  Accordingly, the Debtor does not warrant or represent that the information contained herein is correct, although great effort has been made to be accurate.  This Disclosure Statement contains, in entirety, the Plan itself which is controlling in the event of any inconsistencies.  Each creditor is urged to review the Plan prior to voting.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein and the delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts as set forth herein since the date hereof.  All the terms herein have the same meanings as in the Plan unless the context requires otherwise.

## VII.

### Disclaimer

**EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE BUSINESS OPERATIONS, OR THE PLAN ARE AUTHORIZED NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR IS NOT ABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ACCURACY.  THE FACTUAL INFORMATION REGARDING THE DEBTOR, THE DEBTOR'S ESTATE, ITS ASSETS AND LIABILITIES HAS BEEN DERIVED FROM THE DEBTOR'S RECORDS, THE DEBTOR'S SCHEDULES, PUBLIC RECORDS AND RELATED DOCUMENTS SPECIFICALLY IDENTIFIED HEREIN.**

**NEITHER THE DEBTOR NOR ITS COUNSEL CAN WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ANY INACCURACY, ALTHOUGH THEY DO NOT HAVE ACTUAL KNOWLEDGE OF ANY INACCURACIES.**

**APPROVAL OF THIS DISCLOSURE STATEMENT IS NOT A FINDING BY THE COURT THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE AND COMPLETE.  FURTHER, APPROVAL OF THE DISCLOSURE STATEMENT IS NOT AN INDICATION BY THE COURT OF THE CONFIRMABILITY OF THE PLAN.**

**THE ABILITY OF THE DEBTOR TO ACHIEVE ITS PROJECTIONS IS SUBJECT TO SUBSTANTIAL RISKS FROM SUCH FACTORS AS, BUT NOT LIMITED TO, THE CONTINUED OPERATION OF THE DEBTOR'S BUSINESS AND THE DONATIONS FROM THE WORSHIPERS, THEREFORE, ANY PROJECTIONS PREPARED BY THE DEBTOR DO NOT CONSTITUTE GUARANTIES OF RESULTS.**

### VIII.
### Professional Fees

The Debtor engaged the law firm of Tow & Koenig , Julie M. Koenig as Lead Counsel, to represent the Debtor in this Chapter 11 proceeding.  The Court entered an order approving retention of the law firm on December 6, 2013.   Prior to filing this case, Christian Life paid Tow & Koenig,

PLLC a retainer of $15,000.00 which has been placed in an IOLTA account as required by the U.S. Trustee's office.  Pre-petition, Tow & Koenig withdrew $4,846.53 from the retainer for payment of pre-petition attorneys fees leaving a Chapter 11 retainer in the amount of $10,153.47.  Ms. Koenig bills out at $425.00 per hour and anticipates her total fees will range between $35,000 to $45,000.

## IX.
## Description of Assets and Value

A complete listing of all assets is set forth in the Bankruptcy Schedules and Statement of Financial Affairs on file with the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

## X.
## Summary of the Plan

The following is a brief summary of certain provisions of the proposed Plan of Reorganization to assure that the creditors affected understand its provisions.  This summary should not be considered as solicitation for acceptance of that Plan.  Additionally, creditors should not rely on this summary to decide whether or not to vote in favor of or against the Plan, but are expressly referred to the Plan itself since it contains many provisions which will not be summarized herein.

The Plan of Reorganization proposes to continue the Debtor's operations and make payments to the classes of creditors below over a 5 year period with the exception of Foundation Capital Resources' claim in the approximate amount of $5,233,071.74.    The Debtor's Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.  Due to the seasonal nature of the Debtor's business the Debtor reserves the right, in the event it is unable to make the full monthly payment to any creditor in any given year, to pay

the unpaid amount during the remaining eleven (11) months of that year, respectively. Such a delay in payment shall not constitute a default under the Plan of Reorganization.

The Debtor is proposing a 100% plan.

**Class 1- Administrative Expenses**. Class 1 is unimpaired. Class 1 are Claims entitled to priority by Section 507(a)(1) of the Bankruptcy Code and will consist expenses incurred by the Court appointed Counsel and other professional persons for the Debtor. These fees are incurred prior to the effective date of the Plan, as the same are finally approved and allowed by final order of the Court, and any other expenses incurred during the course of the Chapter 11 proceeding that have not yet been paid. The members of this class include Tow & Koenig, Counsel for the Debtor.

All claims in this class shall be paid in cash and in full in such amounts as may be allowed and approved by the Court on the effective date or after such claims are finally allowed, whichever is later, by the Debtor to the extent of available funds, or such claims may be paid in accordance with any agreement or waiver. In either event, claims in this class shall be paid in full within the 1 year period of the initial plan. The anticipated total expenses to be paid in this class are anticipated to be $35,000 - $45,000.

**Class 2 - The United States Trustee**. Class 2 is unimpaired and consists of the post-confirmation claim of the office of the United States Trustee for its fees from the date of confirmation until the Chapter 11 file is closed by the Bankruptcy Clerk. These fees are based on the amount of disbursements made by the Debtor and are paid on a quarterly basis. The Reorganized Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. §1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismissing this case. After

confirmation, the Reorganized Debtor shall file with this Bankruptcy Court and shall serve on the United States Trustee a financial report for each month, or portion thereof, that this Chapter 11 case remains open in a format prescribed by the United States Trustee.   The U.S. Trustee will continue to have quarterly administrative expense claims until such time as the case is closed by this Court.

All pre-confirmation quarterly fees shall be paid by the effective date of the Plan.

**Class 3 - The Internal Revenue Service**.   Class 3 is impaired and consists of the priority claim of the Internal Revenue Service ("IRS").   The Internal Revenue Service filed a proof of claim for a total of $23,277.24, based primarily on unassessed liabilities for the third and fourth quarter of 2013.   The Debtor has made all of the required payments to the IRS and has filed all required returns.   A copy of the IRS payment history evidencing that all payments have been made is attached as Exhibit "D".   Therefore, the IRS will not receive any payments in this class.

**Class 4 - Secured Claim of Foundation Capital Resources**.   Class 4 is impaired and consists of the claim of Foundation Capital Resources ("Foundation Capital") in the amount of $5,233,071.74.   This claim is secured by a lien on all of the Debtor's Real Property, including the property where the Church is located (the "Church Property").   The Debtor shall pay interest only payments of $19,624.02 for the first six (6) months following confirmation of this Plan.   Starting on the seventh month following confirmation, the Debtor shall pay equal monthly installments of $26,515.21 with interest at the rate of 4.5%.

The Debtor currently has the Church Property on the market and when the Church property sells, the Debtor shall pay Foundation Capital's claim in full and Foundation Capital shall release its liens on all of the Debtor's Real Property.

Default Provisions:  Notwithstanding any other provision in this Plan that might be contrary to the provisions hereof, the following terms and provisions shall govern the determination of and rights and remedies of the holder of a Class 4 Claim upon the default of the Reorganized Debtor under this Plan.

Event of Default.  An event of default shall include the occurrence of any one or more of the Events of Default more particularly set forth in Article 2 of the Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Loan Agreement") and upon the occurrence of an event of default, the holder of a Class 4 Claim shall be entitled to exercise its contractual and statutory remedies as provided in the Loan Agreement and or the security documents that secure payment of the Class 5 Claim(s).

Notice of Default.  Other than as to an event of default related to a tax lien transfer, upon the occurrence of an event of default, the holder of a Class 4 Claim shall give the Reorganized Debtor notice of such default with ten (10) days opportunity to cure.  Such notice shall be in writing delivered by United States mail, first class certified mail, addressed to the Reorganized Debtor at

Pastor Rodriguez
6650 Rankin Road
Humble, Texas 77369

The notice shall be effective upon mailing.  Upon the occurrence of the third event of default other than an event of default related to a tax lien transfer, the notice of default shall not provide for opportunity to cure but shall only give notice that a third event of default has occurred.  The holder of a Class 4 Claim shall be entitled thereafter to exercise any and all contractual and statutory rights in and to the collateral securing its claim.

**Class 5 - Secured Claims of Select Portfolio Servicing, Inc. and U.S. Small Business Administration.**   Class 5 is unimpaired and consists of the claims of Select Portfolio Servicing, Inc. ("Select Portfolio") and U.S. Small Business Administration ("SBA").   Select Portfolio's claim is in the amount of $291,048.92 and is secured by a first lien deed of trust on the real property located at 19503 Suncove Lane, Humble, Texas 77346 (the "Parsonage").   SBA's claim is in the amount of $48,879.56 and is secured by a second lien deed of trust on the Parsonage.   The principal of the Debtor, Pastor Rodriguez, has always made the monthly payment to Select Portfolio and shall continue to make the monthly payment pursuant to the mortgage.   The monthly payment to Select Portfolio is in the amount of $2,128.00.

The Debtor shall continue to make the monthly mortgage payment to the SBA under the terms of the mortgage.   The monthly payment to the SBA is in the amount of $238.00.

**Class 6 - Secured Claims of Advanced Business Copiers and Wells Fargo Financial Leasing, Inc.**   Class 6 is impaired and consists of the lease claims of Advanced Business Copiers and Wells Fargo Financial Leasing, Inc.   The Debtor shall surrender the leased equipment to the respective claimants in full satisfaction of their claims.

**Class 7 - Secured Claim of De Lage Landen Financial.**   Class 7 is unimpaired and consists of the claim of De Lage Landen Financial ("De Lage").   The Debtor leases a copier, finisher and punch kit from De Lage and will continue making the payments under the terms of the lease agreement.   The monthly payment to De Lage is in the amount of $438.59.

**Class 8 - Claim of Gustavo Munoz Jr. and Dora T. Munoz.**   Claim 8 is impaired and consists of the claim of Gustavo Munoz Jr. and Dora T. Munoz/Goldstar Trust Company (the "Munoz").   The Munoz loaned the Debtor $125,000.00 on December 5, 2003, under an unsecured

promissory note.   The note bears interest at the rate of 5.75% compounded annually until the maturity date of December 5, 2018, when it increases to 8% on any unpaid balances.

The Debtor intends to pay this note in full upon maturity, or if unable to do so, to pay it as agreed to with the Munoz.

**Class 9 - Unsecured Claims.**   Class 9 is impaired and consists of the unsecured claims in the amount of $73,746.00.   The Debtor shall begin paying the unsecured claims on a monthly basis beginning on the effective date of the Plan.     The first payment will be due on the fifteenth day of the first full month after the effective date and continuing monthly for sixty (60) months.   The anticipated payments in this class shall be $1,229.10 per month.   All unsecured claims will be paid in full without interest.

**Class 10 - FEMA Region VI**.    Class 10 is impaired and consists of the contingent, unliquidated, unsecured claim of FEMA Region VI in the amount of $26,655.25.    This was originally given to the Debtor as a grant in 2008 after Hurricane Ike.   The Debtor was later informed that it did not qualify for a grant and would have to repay some undetermined amount.   To date the Debtor has not received any request for payment, the actual amount due, or any other information.  The Debtor is electing to treat this as a grant as it has been over five years since it received the grant and no request for payment has been received.   Therefore FEMA Region VI shall not receive any payment under the Plan.

**Class 11 - Equity Security Holders**. Class 10 is impaired and consists of the equity security holders of the Debtor.     Pastor and Mrs. Rodriguez are the only equity security holders of the Debtor, each holding 50% of the stock in the Debtor.   They believe this interest is valued at $0.00 as this is a non-profit entity.

### A.     <u>Other Provisions</u>

Notwithstanding confirmation of the Plan, the Court will retain jurisdiction (i) to determine the allowance of claims upon objection by a party-in-interest; (ii) to determine requests for payment of administrative claims and expenses, including compensation, entitled to priority under §507(a)(i) of the Code; (iii) to resolve disputes regarding interpretation of the Plan; (iv) to modify the Plan; (v) to implement provisions of the Plan; (vi) to adjudicate any cause of action brought by the Debtor or Trustee as representatives of the estate; (vii) to enter a final decree; and (viii) for other purposes.

### B.     <u>Bar dates for filing proofs of claim</u>

Any creditor desiring to receive a distribution under the provisions of this Plan, and whose claim is not evidenced by a court order or set forth on the Debtor's schedules, must file a proof of claim or request for compensation with the Bankruptcy Court **not later than April 29, 2013**.  This bar date is set by the Bankruptcy Court and noticed to all creditors pursuant to the Notice of Creditor's Meeting.

The Debtor has filed as a part of its schedules a list of all creditors, setting forth the identity of each creditor and an indication of the amount due each creditor.  Unless a claim is listed as disputed, contingent or unliquidated, each creditor's claim will be allowed in the amount and status stated on the Debtor's schedules.  Any creditor may file a proof of claim in a different amount or status not later than April 29, 2013.  Failure to file a timely proof of claim will force a creditor to accept the amount of his/her claim as listed on the Debtor's schedules.

Claims listed as **disputed, contingent, or unliquidated** will not be allowed unless a proof of claim with all supporting documents is filed prior to April 29, 2013.  In the event a creditor has filed a proof of claim in these proceedings with which the Debtor disagrees, the Debtor has the

option to file an objection to that claim and request the Court to determine the true value of the claim. The Debtor shall attempt to resolve all objections to claims prior to confirmation. However, the Debtor shall have 60 days from the effective date of the plan to file objections to claims.

Any claim for a debt listed on the Debtor's Schedules as **disputed, contingent, or unliquidated** which is not timely filed shall be of **no force and effect**. No distribution will be made to any creditor that has not timely complied with this provision.

## XI.
## Pending Litigation

There is no pending litigation.  The Debtor does not have any claims or causes of action arising under contract, tort, or statute, including causes of action under the Bankruptcy Code, other than a potential cause of action against the mortgage company for breach of contract.  Likewise, there are no recoverable pre-petition transfers or transfers for the benefit of insiders.

## XII.
## Alternatives to the Plan Proposed

The Debtor expects that the Plan will enable it to realize the maximum benefits for all of its creditors. However, if the Plan is not confirmed, the Debtor will continue to seek other avenues for liquidation.

### A.     Conversion

In the event no suitable alternative can be found, the Debtor would be compelled, as well as obligated, to recommend the conversion of the Chapter 11 case to a case under Chapter 7, and a subsequent liquidation by a duly appointed or elected Chapter 7 trustee. The plan provides that property of the estate will vest in the reorganized Debtor thirty days after entry of the final confirmation order.  Creditors shall retain their ability to utilize rights under 11 U.S.C. Section

1112(b)(1).  Upon a conversion of this case to Chapter 7, all property re-vested in the Debtor under the Plan, or subsequently acquired, shall constitute property of the bankruptcy estate in the converted case.  Although the Debtor is of the opinion that a straight liquidation of the assets would not be in the best interest of the creditors generally, the following is likely to occur:

(i)     The newly appointed Chapter 7 trustee would have to become familiar with the Debtor's operations in order to evaluate all the Debtor's assets and liabilities;

(ii)    In addition to the duplication of efforts that would transpire as a result of the Chapter 7 Trustee having to review documents and interview persons in order to become sufficiently acquainted with the Debtor's business, the Chapter 7 Trustee would likely retain professionals to aid in administering the estate;

(iii)   An additional tier of administrative expenses entitled to priority over general unsecured claims would be incurred.  Such administrative expenses would include Chapter 7 Trustee's commissions and fees for the professionals likely to be retained; and

(iv)    There would likely be no distribution at all to the creditors until the case is ready to be closed.

The Debtor will allow the creditors and parties-in-interest to draw their own conclusions with respect to the delay associated with a Chapter 7 liquidation.  It is certain that the above factors would result in an additional dilution to the projected dividend.  The Debtor believes that such a speculative projection should be made by the creditors themselves.

The Debtor believes if the assets of the Debtor were liquidated through a court trustee the payments to creditors would be less than provided in this Plan.

## B.    <u>Dismissal</u>

Dismissal of the proceeding would, in the Debtor's opinion, lead to an unsatisfactory result.

The Debtor has attempted to set forth possible alternatives to the proposed Plan. Accordingly, one should recognize that a vote against the Plan and the ultimate rejection of the Plan

would not alter the present status of the Debtor.  The vote on the Plan does not include a vote on alternatives to the Plan.  There is no assurance what turn the proceedings will take if the Plan is rejected.  If you believe one of the alternatives referred to above is preferable to the Plan and you wish to urge it upon the Court, you should consult your counsel.

The economy is the only risk posed to creditors that would result in an amendment or change in the plan.

C.     **Default**

Upon confirmation of a Chapter 11 Plan, the Plan operates as a contract between the Debtor and its creditors.  A default occurs if the Debtor fails to make any required payments contained in the Plan.  Each creditor, regardless of class, has the right upon a default under the plan to notify the Debtor and its Counsel of the default and allow 10 days for the Debtor to cure such default.  Notice of default must be made in writing to the Debtor and its Counsel and mailed by certified mail, return receipt requested.  The 10 day period shall begin on the date the Debtor executes the return receipt.

Notice of default shall be given to the following:

        Pastor Rodriguez, President,
        Christian Life Center, Inc.
        6650 Rankin Road
        Humble, Texas 77396

                and

        Julie M. Koenig
        26219 Oak Ridge Drive
        The Woodlands, Texas 77380

If the Debtor fails to cure the default within the 10 day period, the Creditor sending notice of default has the right to bring a lawsuit in the State District Court in Harris County, Texas against

the Debtor or to apply to the Federal Bankruptcy Court for relief through dismissal or conversion.

## XIII.

### Federal Income Tax Consequences to Creditors and the Debtor

**1.    Federal Tax Consequences to Creditors:**

The Debtor believe that the following discussion generally sets forth the Federal income tax consequences to Creditors upon confirmation and consummation of the Plan.  No ruling has been sought or obtained by the Debtor from the Internal Revenue Service ("IRS") with respect to any of these matters.  The following discussion of Federal income tax consequences is not binding on the IRS and is general in nature.  No statement can be made herein with respect to the particular Federal income tax consequences to any Creditor.

**AS A RESULT OF THE COMPLEXITY OF THE APPLICABLE PROVISIONS OF THE INTERNAL REVENUE CODE, EACH CREDITOR IS URGED TO CONSULT ITS OWN TAX ADVISOR IN ORDER TO ASCERTAIN THE ACTUAL TAX CONSEQUENCES TO IT, UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAWS, OF CONFIRMATION AND CONSUMMATION OF THE PLAN.**

Creditors may be taxed on distributions they receive from the Estate.  The amount of the income or gain, and its character as ordinary income or capital gain or loss, as the case may be, will depend upon the nature of the Claim of each particular Creditor.  The method of accounting utilized by a Creditor for Federal income tax purposes may also affect the tax consequences of a distribution. In general, the amount of gain (or loss) recognized by any such Creditor distributee will be the difference between (i) the Creditor's basis for Federal income tax purposes, if any, in the Claim and (ii) the amount of the distribution received.  Whether the distribution will generate ordinary income or capital gain will depend upon whether the distribution is in payment of a Claim or an item which

would otherwise generate ordinary income on the one hand or in payment of a Claim which would constitute a return of capital.

**2.      Federal Tax Consequences to the Debtor:**

The Debtor does not owe any 941 Federal Taxes to the Internal Revenue Service and it is a non-profit entity.    Therefore, there are no tax consequences to the Debtor as a result of its filing for Chapter 11 Reorganization nor will there be any tax consequences as a result of completing its Plan of Reorganization.

**XIV.**
**<u>Means for Implementation and Execution of the Plan</u>**

Implementation of the Plan requires entry of an order by the Bankruptcy Court confirming the Plan.  The Plan is to be implemented, if accepted and approved by the Bankruptcy Court, in its entire form as filed on March 28, 2014.    The effective date of the plan shall be 30 days after the date the Plan is confirmed by this Court.

**XV.**
**<u>Modification of Disclosure</u>**

The Debtor may propose amendments to or modification of this Disclosure Statement at any time prior to the confirmation, with leave of the Court.  After confirmation, the proponent may, with the approval of the Court, so long as it does not materially or adversely affect the interests of the creditors or other parties-in-interest as set forth herein, remedy any defect or omission, reconcile any inconsistencies in this Disclosure Statement, or in the Order Confirming Disclosure Statement, in such a manner as may be necessary to carry out the purposes and intent of this Disclosure Statement.

**XVI.**
**<u>Disclosure Required by the Bankruptcy Code</u>**

The Bankruptcy Code requires the disclosure to the Bankruptcy Court of payments made or promised of the kind as set forth in Section 1129(a)(5) of the Bankruptcy Code.  The Debtor retained Julie M. Koenig, Tow & Koenig, PLLC., as bankruptcy counsel on a $15,000 retainer.  The Bankruptcy Code requires that the Court approve all professional's fee applications prior to payment by a Debtor.  Therefore all fees and costs incurred are subject to approval of the Bankruptcy Judge.

## XVII.
## Fraudulent and Preferential Transfers

To the best of Debtor's knowledge and belief there have not been any fraudulent or preferential transfers within one year of the bankruptcy filing.

## XVIII.
## Other Bankruptcies

None.

## XIX.
## Conclusion

The Debtor believes that approval of its Plan will provide an opportunity for its creditors to receive more money in the foreseeable future on their claims than would be received in a straight liquidation by a Trustee in a Chapter 7 case or from a distress sale of all the assets.  If the Plan is not approved, the Debtor will continue to seek other reorganization alternatives, but liquidation might ensue, with the consequences as discussed above in relation to the liquidation alternative.

This Disclosure Statement is subject to the approval by the Bankruptcy Court after notice and hearing.

**THE APPROVAL BY THE UNITED STATES BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE DEBTOR'S PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

The Plan of Reorganization contains additional provisions and each creditor should review the provisions of the Plan with particularity.

Respectfully submitted this 28th day of March, 2014.

_____*/s/ Pastor Rodriguez, President*_____
**Pastor Rodriguez, President,**
**Christian Life Center, Inc.**

**OF COUNSEL:**
**TOW& KOENIG, PLLC.**

By:_____*/s/  Julie M. Koenig*_____
        Julie M. Koenig
        SBA# 14217300
        26219 Oak Ridge Drive
        The Woodlands, Texas 77380
        281/681-9100 (Telephone)
        281/681-1441 (Telecopier)
        jkoenig@towkoenig.com

Attorney for the Debtor